**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-246-JBC**

**PAUL CARTER,**                                                                          **PLAINTIFF,**

**V.**                                 **MEMORANDUM OPINION AND ORDER**

**TOM PORTER, ET AL.,**                                                          **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court on the motion to dismiss by the defendants in

their official capacities and the partial motion to dismiss by the defendants in their

individual capacities.  DE 4.  The court, having reviewed the record and being

otherwise sufficiently advised, will grant both motions and dismiss all claims except

those against defendants in their individual capacities involving malicious

prosecution.

**I.      Background**[1]

This action arises from a traffic stop in Lexington, Kentucky, on October 14,

2006.  Trooper Jason Palmer of the Kentucky State Police ("KSP") stopped the

plaintiff, Paul Carter; searched his vehicle; and placed him under arrest for various

criminal charges.  The plaintiff spent twelve days in jail before posting bond and

---

[1] The court will take the plaintiff's factual allegations as true for purposes of
this motion to dismiss.  *See Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007)
(noting, "when ruling on a defendant's motion to dismiss, a judge must accept as
true all of the factual allegations contained in the complaint") (citation omitted).

1

being released.  The plaintiff was arraigned following his indictment on December 27, 2006.  The criminal charges against the plaintiff were dismissed on May 16, 2007.  The plaintiff filed a complaint against the defendants, Palmer as well as KSP Commander Tom Porter and KSP Commander Nathan Kent, in both their official and individual capacities, in Fayette Circuit Court on May 15, 2008, alleging (1) violation of 42 U.S.C. § 1983; (2) failure to train and negligent hiring and retention; (3) false arrest/false imprisonment; (4) intentional infliction of emotional distress; and (5) malicious prosecution.  DE 1-5.  The plaintiff seeks compensatory and punitive damages; costs and fees; reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and any other legal or equitable relief to which he may be entitled.  DE 1-5.  The defendants removed this matter on June 2, 2008.  DE 1-4.

The plaintiff also alleges (1) that the search of his vehicle by defendant Palmer on October 14, 2006, was without his consent and without legal basis; (2) that the defendants prosecuted him wrongfully and without cause; and (3) that the defendants lied under oath about the traffic stop that led to his arrest.  In support of these contentions, the plaintiff states that Palmer initially testified falsely at a March 28, 2007, suppression hearing when he testified that his cruiser's video camera was not operational on the night of the plaintiff's arrest and that the plaintiff did not use his turn signal before making a turn.  After this hearing and further investigation by the plaintiff, KSP turned over to the plaintiff a videotape of the stop taken from Palmer's cruiser's video camera that showed the plaintiff did in

2

fact use his turn signal before making the turn in question.  Prior to an evidentiary hearing to consider these issues set for May 17, 2007, an agreed order of dismissal was entered on May 11, 2007, and the order stated that it was "based on the testimony at the suppression hearing and the subsequent discovery of other evidence."

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007) (citing *Conley v. Gibson,* 335 U.S. 41, 47 (1957)).  In order to avoid a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff has an obligation to provide the grounds for his entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Id.* at 1964-1965.  This does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974. When ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint.  *Erickson,* 127 S.Ct. at 2200 (citing *Twombly*).

## III.   Analysis

### A.    Eleventh Amendment Immunity for Federal Official-Capacity Claims

The defendants first assert that the Eleventh Amendment immunizes them against claims under 42 U.S.C. § 1983 regarding acts done in their official capacities as members of the KSP.

"[A] State is not a 'person' within the meaning of § 1983" and, therefore, § 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66 (1989). This rule derives from the Eleventh Amendment's bar on "such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Id.* at 66 (citation omitted). It is clear "[t]hat Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect." *Id.*

"Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* at 71 (citations omitted). The plaintiff's § 1983 claim is against the defendants in their official capacities as KSP commanders and troopers. Therefore, the defendants cannot be sued for monetary damages under § 1983 because such a claim is in reality "a suit against the official's office," *id.* at 71, and "a State is not a person within the meaning of § 1983." *Id.* at 65. Consequently,

4

the court will dismiss the plaintiff's § 1983 claim regarding acts done by the defendants in their official capacities as members of the KSP.[2]

While the plaintiff concedes it "could be considered technically correct" that the defendants are immune from federal claims under the Eleventh Amendment, he asks the court "to consider public policy notions that would be implicated by such a decision." DE 5, at 2. Specifically, he argues that the court should deny the defendants immunity because municipal police officers do not enjoy such immunity, *see, e.g.*, *Bogan v. Scott-Harris*, 523 U.S. 44, 53 (1998), "[t]his discrepancy between municipal and state officers is a distinction without a difference," and "[s]uch a level of manifest unfairness should convince this court to disregard the legal technicality urged by the defendants' motion." DE 5, at 3. The United States Supreme Court, however, has found that the immunity enjoyed by state officials derives from the Eleventh Amendment to the United States Constitution and this court will not depart from controlling Supreme Court precedent on public policy grounds already considered and rejected by the Supreme Court. *See Bogan*, 523 U.S. at 53 ("Municipalities themselves can be held liable for constitutional violations, whereas States and the Federal Government are protected by sovereign immunity.") (citations omitted).

_____

[2] "Of course, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10 (internal quotation marks and citations omitted). The plaintiff in this case, however, has not requested injunctive relief.

**B.      Governmental Immunity for Official-Capacity Claims Under State Law**

The defendants also assert that governmental immunity protects them as to

the state-law claims made against them in their official capacities as members of

KSP.

"[A] state agency is entitled to immunity from tort liability to the extent that

it is performing a governmental, as opposed to a proprietary, function." *Yanero v.*

*Davis*, 65 S.W.3d 510, 519 (Ky. 2001) (citations omitted). "If a state agency is

deemed to have governmental immunity, its officers or employees have official

immunity when they are sued in their official or representative capacity." *Autry v.*

*Western Kentucky Univ.*, 219 S.W.3d 713, 717 (Ky. 2007). "[U]nless created to

perform a governmental function, a state agency is not entitled to governmental

immunity.  An analysis of what an agency actually does is required to determine its

immunity status." *Id.*  "It is one of the sovereign powers of government to enforce

the observance of all criminal laws within its jurisdiction," *Hirschfeld v.*

*Commonwealth*, 76 S.W.2d 47, 48 (Ky. 1934), and "[t]he prevention of crime is a

purely governmental function." *Caudill v. Pinsion*, 24 S.W.2d 938, 940 (Ky.

1930).  As a part of the Executive Branch of the government of the Commonwealth

of Kentucky, *see* KRS 16.060, KSP is a "state agency" and, therefore, the

defendants are immune from suits under state law in their official capacities as KSP

troopers.

The plaintiff argues, without providing any authority beyond general

6

principles of agency law, that the defendants in their official capacities can be liable for actions that exceeded their scope of employment.  However, any acts by the defendants that exceeded the scope of their employment would not have been acts committed in their official capacities in the first place.  Otherwise, the defendants "have official immunity when they are sued in their official or representative capacity."  *Autry*, 219 S.W.3d at 717.

     **C.**    **Statute of Limitations for Federal and State Claims Regarding Wrongful Arrest and False Imprisonment**

The defendants also assert that the plaintiff's claims made against them in their individual capacities regarding wrongful arrest and false imprisonment under state law and 42 U.S.C. § 1983 are barred by the applicable statute of limitations.

"Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose.  This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts."  *Wallace v. Kato*, 127 S. Ct. 1091, 1094 (2007) (citations omitted).  The statute of limitations for personal-injury torts in Kentucky is one year.  KRS 413.140(1)(a).  *See Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) ("[W]e conclude that section 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a).").  Therefore, the plaintiff's claims under Kentucky law and 42 U.S.C. § 1983 regarding wrongful arrest and false imprisonment would be time-barred if they were filed more than one year after the cause of action accrued.

7

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 127 S. Ct. at 1095 (emphasis in original). "[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted). In the case of a claim based on false arrest, "[t]here can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred . . . so the statute of limitations would normally commence to run from that date." *Id.* There is an exception for claims based on false imprisonment because "the victim may not be able to sue while he is imprisoned: Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." *Id.* at 1095-96 (internal quotation marks and citations omitted). Therefore, the plaintiff's causes of action for false imprisonment and wrongful arrest under § 1983 accrued no later than the date of his release, twelve days after his arrest on October 14, 2006, or else no later than the date of his arraignment on December 27, 2006. Consequently, because the state-court complaint in this case was not filed until May 15, 2008, the plaintiff's § 1983 claims regarding false imprisonment and wrongful arrest against the defendants in their individual capacities are time-barred because they were filed beyond the one-year statute of limitations for § 1983 claims that arise from conduct in Kentucky.[3]

––––––––––––––––––––––

[3] The defendants do not request the dismissal of claims regarding malicious prosecution. DE 6, at 5. A review of Count I of the complaint suggests the

8

The plaintiff argues that the statute of limitations should not have begun to run until May 16, 2007, when his criminal charges were dismissed and "he discovered the wrongfulness of the stop, search and arrest," five days after Palmer's "testimony in Fayette Circuit Court revealed that Defendant not only had no basis on which to stop Plaintiff, but that he had lied under oath regarding the existence of the video tape evidence which would have proven that lack of reasonable basis." DE 5, at 6. In *Dunn v. Felty*, 226 S.W.3d 68, 72 (Ky. 2007), the Kentucky Supreme Court found that a false imprisonment claim filed more than seventeen months after the plaintiff's arraignment was time-barred under Kentucky's one-year statute of limitations. The plaintiff's cause of action accrued when he was arraigned because, "[i]n contrast to the tort of malicious prosecution, favorable termination of criminal proceedings is not an element of false imprisonment." *Id. See also Cissell v. KFC Corp.*, No. 2006-CA-001596-MR, 2007 WL 3227571, at *1-*2 (Ky. Ct. App. Nov. 2, 2007) (rejecting the argument in a wrongful arrest action "that the tolling of the statute of limitations should not have begun until the date of the dismissal of the criminal process"). The instant plaintiff personally experienced the alleged wrongful acts of the defendants on October 14, 2006, and the twelve following days, through the time of his arraignment on December 27, 2006. In any event, the plaintiff had all of the information about the incident which he now possesses by the time of Palmer's

---

plaintiff intends for his claim under 42 U.S.C. § 1983 to encompass his alleged malicious prosecution. DE 1-5, at 3-6.

9

testimony on May 11, 2007, which was more than a year before this suit was filed

on May 15, 2008.  That the criminal process against the plaintiff was not

dismissed until May 17, 2007, is relevant for statute-of-limitations purposes

regarding the claim of malicious prosecution, but not for claims of wrongful arrest

and false imprisonment, as noted by the Kentucky Court of Appeals in *Cissell*.

      **D.**      **Intentional Infliction of Emotional Distress**

Finally, the defendants assert that the claim against them in their individual

capacities for intentional infliction of emotional distress, also known as the tort of

outrage, should be dismissed because it is a "gap-filler" tort that is available only

when a plaintiff cannot recover for his emotional distress under traditional tort

theories.

In *Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. Ct. App. 2001), the Kentucky

Court of Appeals upheld dismissal of an outrage claim where the plaintiff "may be

able to recover emotional damages arising from false imprisonment, assault or

battery" and did not "show that [the defendant's] actions were intended only to

cause him extreme emotional distress, rather than to merely touch or to deprive him

of his liberty."  *Id.  See also  Cissell*, 2007 WL 3227571, at *1-*2 ("[T]he tort of

outrage . . . is a gap-filler tort only available when the alleged tortious conduct

cannot be redressed by traditional common law torts . . . .  Because the damages

for [the plaintiff's] claimed emotional distress were part of the recovery available to

him under his claims of false imprisonment, slander, libel, and negligence, . . . he

10

could not maintain an additional claim for the same damages under the tort of outrage."  (Citations omitted).).

Like the false imprisonment claim in *Banks*, the plaintiff's remaining claim of malicious prosecution also contemplates emotional damages.  *See also McCoy v. RWT, Inc.*, Nos. 2003-CA-002177-MR, 2003-CA-002241-MR, 2005 WL 1593651, at *5 (Ky. Ct. App.  July 8, 2005), *rev'd on other grounds*, 244 S.W.3d 44 (Ky.  2008) (affirming dismissal of claim for intentional infliction of emotional distress because plaintiff's additional claims of defamation and malicious prosecution are traditional torts that allow for recovery of damages due to emotional distress).  Therefore, the claim for intentional infliction of emotional distress must be dismissed.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the defendants' motion to dismiss, DE 4, is **GRANTED**, and the plaintiff's claims under Kentucky law and 42 U.S.C. § 1983 against defendants in their official capacities are **DISMISSED**.

**IT IS FURTHER ORDERED** that the defendants' partial motion to dismiss, DE 4, is **GRANTED**, and the plaintiff's claims under Kentucky law and 42 U.S.C. § 1983 against the defendants in their individual capacities are **DISMISSED** with the exception of plaintiff's state law and federal claims sounding in malicious prosecution.

11

Signed on  November 12, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY