UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| PAUL CARTER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:08-CV-246-REW |
| | ) | |
| v. | ) | OPINION and ORDER |
| | ) | |
| TOM PORTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Defendant Jason Palmer ("Palmer"), by counsel, moved for summary judgment as to the remaining malicious prosecution claims. *See* DE #33 (Motion for Summary Judgment). Plaintiff Paul Carter, Jr., ("Carter") responded in opposition, *see* DE #76 (Response in Opposition), and Defendant Palmer subsequently replied. *See* DE #77 (Reply). In his response, Carter passingly requested that summary judgment be entered in his favor. *See* DE #76 at ¶ 60.

Defendants Tom Porter ("Porter") and Nathan Kent ("Kent"), by counsel, moved to dismiss the complaint or, alternatively, for summary judgment. *See* DE #34 (Motion to Dismiss or for Summary Judgment). Plaintiff responded in opposition, *see* DE #76 (Response in Opposition), and Defendants Porter and Kent subsequently replied. *See* DE #78 (Reply). Again, in this response, Carter requested summary judgment be entered in his favor. *See* DE #76 at ¶ 60.

Having reviewed the filings and full record, under the required standards, the Court **GRANTS** Defendant Palmer's motion for summary judgment on the federal malicious prosecution claim. Additionally, the Court **GRANTS** Defendants Porter and Kent's motion to dismiss on the federal malicious prosecution claim and **DENIES** in full Plaintiff's motion for

summary judgment. The Court **REMANDS** the remaining state malicious prosecution claim to the Fayette Circuit Court.

Chief Judge Jennifer B. Coffman, who then presided over the case,[1] narrowed this action to malicious prosecution theories by prior order. *See* DE #7 (Memorandum Opinion & Order). Such claims focus on the propriety of the state legal proceedings and are distinct from any theory to recover based on the propriety of the October 14, 2006, traffic stop. Probable cause undoubtedly supported each basis for prosecution, a status fatal to the malicious prosecution claims. As such, and although the Court has concerns over the validity of the initial stop and Trooper Palmer's handling of the case, summary judgment is appropriate as to the constitutional tort.

## I. BACKGROUND[2]

This matter emerges from an October 14, 2006, traffic stop in Lexington, Kentucky. *See* DE #76 at ¶¶ 2, 6. Palmer, a Kentucky State Police ("KSP") trooper, initiated the traffic stop on Carter, conducted a frisk of Plaintiff, and searched the vehicle. *See* DE #1-5 (State Court Complaint) at ¶¶ 14, 18; DE #76 at ¶¶ 6, 9. Defendant Palmer placed Carter under arrest and lodged various criminal charges. *See* DE #1-5 at ¶ 20; DE #76 at ¶¶ 10, 11. Plaintiff spent twelve days in jail before his family posted a property bond securing his release. *See* DE #1-5 at ¶ 22; DE #76 at ¶ 14.

---

[1] On October 6, 2009, the parties consented to the assignment of the case to a United States Magistrate Judge, and Magistrate Judge James B. Todd began presiding. *See* DE #19 (Notice and Consent). Upon Judge Todd's retirement in 2010, the undersigned assumed his docket, including the instant case.

[2] In accordance with Federal Rule of Civil Procedure 56, the Court discusses the facts in favor of Plaintiff, the non-movant. The Court assembles this background largely from the Complaint and Carter's response to the summary judgment motions at issue.

On October 24, 2006, the Fayette District Court conducted a preliminary hearing. *See* DE #76 at ¶ 77. Defendant Palmer testified at that hearing, and both sides had an opportunity to examine the witness. *See id.* On December 27, 2006, the grand jury indicted Carter, and the matter was set for trial. *See id.* at ¶ 12.

Plaintiff moved to suppress evidence seized from his person and vehicle, contending that Palmer lacked a reasonable and articulable basis for the traffic stop. *See* DE #1-5 at ¶ 23. At the suppression hearing, Defendant Palmer testified under oath that no video of the traffic stop existed. *See id.* at ¶ 28. The trial court denied the motion to suppress. *See id.* at ¶ 29. However, a KSP supervisor subsequently located video of the traffic stop. *See id.* at ¶ 30. Carter moved to reopen the motion to suppress, *see id.* at ¶ 31; DE #76 at ¶ 51, and the state court conducted a status conference. *See* DE #1-5 at ¶ 32. The court ordered Palmer to be produced for further examination and commented that the Commonwealth may want to dismiss the case to "save a State Trooper's hide." *See id.* at ¶ 33; DE #76 at ¶ 52.

On May 16, 2007, the parties presented an agreed order of dismissal, which the trial court entered. *See* DE #1-5 at ¶ 34; DE #76 at ¶ 53. This order referenced suppression testimony and dismissed all charges against Carter with prejudice. *See id.*

On May 15, 2008, Plaintiff filed a lawsuit against all three Defendants, individually and in their official capacities. *See* DE #1-5. The Complaint nebulously alleged federal and state law causes of action, including unlawful and malicious detention, denial of equal protection of the laws, failure to train, negligent hiring and retention, false arrest, false imprisonment, intentional infliction of emotional distress, and malicious prosecution. *See id.* at 3-9. Carter sought compensatory and punitive damages. *See id.* at 10.

Defendants jointly removed the case to federal court on June 2, 2008. *See* DE #1 (Joint Notice of Removal). That same day, Palmer, Porter, and Kent moved jointly to dismiss all claims against them in their official capacities and likewise moved to dismiss all claims against them in their individual capacities, except for the malicious prosecution claims.[3] *See* DE #4 (Motion to Dismiss Official Capacity Claims and Motion for Partial Dismissal). Judge Coffman granted Defendants' motions and dismissed all claims except the federal and state malicious prosecution claims that remained against Palmer, Porter, and Kent individually. *See* DE #7. The instant motions concern those remaining claims.

## II. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must view the complaint in the light most favorable to the plaintiff, accepting all well-pled factual allegations as true. *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009). This requirement does not apply to legal conclusions. *Id.* Although Federal Rule of Civil Procedure 8(a)(2) requires merely "a short and plain statement of the claim," a plaintiff must allege enough facts to make the claim plausible. *See Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). The plaintiff must provide more than "a formulaic recitation of the elements of a cause of action." *Id.* at 1964. Factual allegations must "'show *entitlement* to relief.'" *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) (quoting *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007)

---

[3] Defendant Palmer and Defendants Porter and Kent also answered the Complaint that day. *See* DE #2 (Joint Answer by Porter and Kent); DE #3 (Answer by Palmer). Notably, all three Defendants pled qualified immunity as a defense to the claims. *See* DE #2 at 3; DE #3 at 5-6.

(emphasis in original)).

Under Rule 12(d), a motion to dismiss under Rule 12(b)(6) must be treated as a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court." *See* Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Business Machine Corp.*, 607 F.3d 1102, 1104-05 (6th Cir. 2010). Importantly, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). If a party would likely be "'surprised by the proceedings,'" the court must afford notice. *See Wysocki*, 607 F.3d at 1105 (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 203 (6th Cir. 1998)).

Pursuant to Rule 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] *See* Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine issue of material fact initially rests with the moving party. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings,

---

[4] By December 1, 2010, amendment, the language of the summary judgment standard changed. However, the language changes have not changed the standard itself. *See* Fed. R. Civ. P. 56 advisory committee's note (2010) ("The standard for granting summary judgment remains unchanged."). The Court thus applies the newest Rule 56 language here.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *See Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). In cases, as here, where the defendant is the moving party, "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *See Anderson*, 106 S. Ct. at 2514. However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.* at 106 S. Ct. at 2552.

A fact is "material" if the underlying substantive law identifies the fact as an essential element. *See Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *See id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *See id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be admissible at trial. *See Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

**III. ANALYSIS**

Under the standards described, to the extent applicable, the Court considers the motions for summary judgment and/or dismissal by Plaintiff Carter, Defendant Palmer, and Defendants Porter and Kent.

As a preliminary matter, the Court defines the elements of the federal and state malicious prosecution claims at issue. The Sixth Circuit permits a distinct malicious prosecution claim in cases brought under 42 U.S.C. § 1983 and has recently defined the elements of this claim in the Fourth Amendment context at length:

- "First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (parallel citations removed).

- "Second, because a 1983 claim is premised on the violation of a constitutional right, the plaintiff must show there was a lack of probable cause for the criminal prosecution." *Id.*

- "Third, the plaintiff must show that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, **apart from the initial seizure**." *Id.* (emphasis added).

- "Fourth, the criminal proceeding must have been resolved in the plaintiff's favor." *Id.*

Notably, a warrantless initial seizure falls under a different section 1983 cause of action. *See Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (false arrest claim). Malicious prosecution is concerned with "'*wrongful institution* of legal process.'" *See Sykes*, 625 F.3d at 308 (quoting *Wallace v. Kato*, 127 S. Ct. 1091, 1096 (2007) (emphasis in original)). Thus, the claim here is elementally distinct from the stop analysis. Judge Coffman dismissed any claim relative to the stop and initial arrest based on the statute of limitations. *See* DE #7. As

such, and per *Sykes*, the initial seizure is not at issue and the Court must assess the propriety of

judgment on the malicious prosecution (or so-called prosecutorial seizure) theory. This

assessment requires review of the initiated charges and whether fact questions preclude summary

judgment under the *Sykes* formulation.[5] *See Wilkins v. De Reyes*, 528 F.3d 790, n.5 799 (10th

Cir. 2008) ("But . . . the institution of legal process separates the two claims [false imprisonment

versus malicious prosecution] – and thus makes them legally distinct[.]").

In Kentucky, the elements of the tort of malicious prosecution address similar conduct.

The Kentucky Supreme Court defined the elements as follows:

> Generally speaking, there are six basic elements necessary to the maintenance of
> an action for malicious prosecution, in response to both criminal prosecutions and
> civil action. They are: (1) the institution or continuation of original judicial
> proceedings, either civil or criminal, or of administrative or disciplinary
> proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such
> proceedings in defendant's favor, (4) malice in the institution of such proceeding,
> (5) want or lack of probable cause for the proceeding, and (6) the suffering of
> damage as a result of the proceeding.

*Raine v. Drasin*, 621 S.W.2d. 895, 899 (Ky. 1981). This definition of the cause of action remains

good law today. *See, e.g.*, *Hunt v. Lawson*, No. 2007-SC-438-DG, 2008 WL 4691052, at *5 (Ky.

Oct. 23, 2008) (unreported) (citing *Raine* elements); *Hamilton v. McKenzie*, Nos. 2009-CA-

1350-MR, 2009-CA-1509-MR, 2010 WL 4669066, at *2 (Ky. Ct. App. Nov. 19, 2010)

(unreported) (same).

With the elements of the claims defined, the Court turns to the various motions by the

parties.

---

[5] Plaintiff repeatedly misunderstands this calculus, focusing closely on stop propriety. *See*
DE #76 at ¶¶ 1, 99, 119. The stop was not pursuant to legal process, and malicious prosecution
focuses on the legitimacy of the process initiated. The stop is a stand-alone issue, and Judge
Coffman took that potential tort off the table based on the applicable statute of limitations.

**A. Motion by Plaintiff**

Plaintiff at least facially moves for summary judgment against Defendant Palmer and

Defendants Porter and Kent. *See* DE #76 at ¶ 60. However, the dispositive motion deadline

expired more than six months prior. *See* DE #22 (Scheduling Order). Carter never requested

leave to file a dispositive motion out of time, so the summary judgment motion must be denied.

Even if the Court permitted the motion, the Court would reject same because Plaintiff

fails to develop the motion at all beyond requesting relief. Carter spends all of his efforts in the

brief alleging that a genuine dispute of material facts remains. Even the sentence in which

Plaintiff facially moves for summary judgment touts such genuine disputes: "There exist genuine

issues of material fact affirmatively of record, including conflicting sworn testimony and

physical evidence (videos, police records, discovery, cited supra); and summary judgment is

improper or favors <u>summary judgment in favor of Plaintiff, which we request</u>." *See id.*

(underlining in original). Neither Defendant Palmer nor Defendants Porter and Kent appear even

to have recognized the freestanding request for summary judgment in the context of Plaintiff's

brief. No Defendant responded.

For summary judgment to be proper, no genuine dispute can remain, *see* Fed. R. Civ. P.

56(a). Carter, by repeatedly alleging the existence of such disputes and arguing for a finding of

same, fails to make a credible case for summary judgment. The burden of establishing the

absence of a genuine issue of material fact initially rests with the moving party. *See Celotex*, 106

S. Ct. at 2553; *Lindsay*, 578 at 414. Plaintiff has not even approached that initial burden here

with respect to the claim at issue.

Plaintiff's motion for summary judgment must be denied as to Defendant Palmer and

Defendants Porter and Kent. The deadline for dispositive motions long ago expired. Even so, Carter has not met the initial burden to demonstrate the absence of a genuine dispute of material fact from the perspective of a claimant.

## B. Motion by Defendant Palmer

According to Defendant Palmer, summary judgment should be entered for him because qualified immunity bars Plaintiff's federal and state malicious prosecution claims. *See* DE #33 at 8-10. Palmer emphasizes the probable cause findings of the grand jury and state district court, and he also places significance on the criminal case's dismissal by agreement. *See id.* at 11-13. Finally, Defendant Palmer argues that, even on a plain determination of the operative facts, probable cause existed, and he asserts that Plaintiff has tried improperly to bootstrap a time-barred illegal search and seizure claim to the instant malicious prosecution theories. *See id.* at 13-21.

Plaintiff advocates that summary judgment would be improper here, where Defendant Palmer allegedly acted outside the scope of official duties and without probable cause and perjured himself at the subject grand jury and preliminary hearing proceedings. *See* DE #76 at ¶ 77. Carter argues that law enforcement officers should not be afforded absolute immunity for their testimony at legal proceedings and moves this Court to declare the associated holdings of *Briscoe v. LaHue*, 103 S. Ct. 1108 (1983); *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999); and *Stone v. Glass*, 35 S.W.3d 827 (Ky. Ct. App. 2001), to be unconstitutional.[6] *See* DE #76 at ¶

---

[6] This Court would have no power to overrule or displace a decision by the Supreme Court or Sixth Circuit. Because of the probable cause analysis, the Court never reaches the effects of immunity on the malicious prosecution cause of action. That said, the Court has conceptual doubt about Plaintiff's ability to prove a cause of action against Palmer premised on testimony given by Palmer. The very nature of absolute testimonial immunity would cut against

88 n.14. Plaintiff repeatedly urges the Court not to be ensorcelled by the purported narrative reverse-engineering of Defendant Palmer. *See, e.g.*, *id.* at ¶¶ 94 ("witch-hunt tactics"), 96 ("falsification"), 99 ("reverse-engineer and fabricate"). According to Carter, dismissal of criminal proceedings by agreed order fails to bar a state-law malicious prosecution claim. *See id.* at ¶¶ 107-110. Finally, Plaintiff contends that any qualified immunity has been dissolved by Defendant Palmer's allegedly perjured statements. *See id.* at ¶¶ 111-117.

Palmer replied briefly to assert that any allegations of malice have no relevance to the pending summary judgment motion as to either the federal or state malicious prosecution claims. *See* DE #77 at 2. Additionally, Defendant Palmer reemphasized his position that probable cause fully supported the criminal proceedings. *See id.* at 5.

As an important preliminary matter, the Court notes the time periods implicated by the malicious prosecution claims against Defendant Palmer and Defendants Porter and Kent. Given that Plaintiff Carter appears to assert, at least by implication, violations of his rights not to be detained without probable cause and not to be subjected to prosecution without procedural due process, the various probable cause determinations matter:

- Initial Arrest: Defendant Palmer arrested Carter as a result of the stop, charging him with various crimes and serving as the initial basis for custody. *See* DE #38-2.

---

that proof vehicle. *See, e.g.*, *Brice v. Nkaru*, 220 F.3d 233, 239 n.6 (4th Cir. 2000) (noting, regarding claim premised on testimony, "there could be no liability based on Nkaru's testimony at the preliminary hearing, because witness absolute immunity applies to testimony given in a judicial proceeding."). *But see Garrett v. Stanton*, No. 08-175-WS-M, 2009 WL 4258135, at *8 (S.D. Ala. Nov. 19, 2009) (discussing tension between absolute immunity and malicious prosecution claim, and further referencing "complaining witness" exception in some jurisdictions). The Court does not resolve or address the effect of testimonial immunity on Plaintiff's claims.

- Preliminary Hearing: After hearing from a witness and attorneys on both sides, the Fayette District Court determined probable cause existed to keep the matter on the criminal docket, so that determination served as the basis for continued prosecution and any continued custody.[7]

- Grand Jury: The Grand Jury indicted Carter for the offenses, so that determination served as the basis for continued prosecution.[8]

Plaintiff alleges that he never should have been deprived of his liberty by arrest in the first place, let alone for the period of twelve days prior to his family's posting of a property bond. Subsequently, Plaintiff Carter asserts that he should not have been subjected to prosecution without procedural due process.[9] According to Carter, Defendant Palmer poisoned the preliminary hearing and grand jury determinations with misrepresentations.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Pearson v. Callahan,* 129 S. Ct. 808, 815

---

[7] Ordinarily, such a judicial determination of probable cause for further prosecution, where both parties participated in the underlying proceeding, would shield officers from malicious prosecution claims. *See Buttino v. City of Hamtramck*, 87 F. App'x 499, 503 (6th Cir. 2004) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 174-75 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001)). However, this protection will not apply if the officers made material misrepresentations to the deciding court. *See Sykes*, 625 F.3d at 312.

[8] A grand jury determination of probable cause for further prosecution would also ordinarily shield officers from malicious prosecution claims. *See Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). However, this protection will likewise not apply if the officers made material misrepresentations. *See Sykes*, 625 F.3d at 312.

[9] The Court has some question whether this right, pleaded only vaguely in the original Complaint, appropriately sounds in a malicious prosecution action. *See Albright v. Oliver*, 114 S. Ct. 807, 812-14 (1994) (holding that, in the absence of a specific violation of a federal constitutional right, a section 1983 claim cannot be grounded in any "substantive due process right to be free of prosecution without probable cause."). Neither party spends much, if any, time interrogating the specific rights alleged by Plaintiff Carter. The Court applies the *Sykes* analysis given the lack of clarification and particular record presented.

(2009) (quoting *Harlow v. Fitzgerald,* 102 S. Ct. 2727, 2738 (1982)). The qualified immunity

protection "applies regardless of whether the government official's error is a mistake of law, a

mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation

marks omitted). To determine whether a government official should receive qualified immunity,

a reviewing court conducts a two-step inquiry: (1) whether the defendant violated a

constitutional right and (2) whether that right was clearly established.[10] *See Aldini v. Johnson,*

609 F.3d 858, 863 (6th Cir. 2010). In the summary judgment posture, those two steps have been

articulated as follows: "First, '[t]aken in the light most favorable to the party asserting the injury,

do the facts alleged show the officer's conduct violated a constitutional right?'. . . And, if so, was

that right clearly established, such that a reasonable officer would have known that his conduct

was unlawful." *See Wilkie v. Robbins*, 127 S. Ct. 2588, 2617 (2007) (quoting *Saucier v. Katz*,

121 S. Ct. 2151, 2156 (2001)). The court need not analyze each step sequentially and instead

may exercise discretion to order the analysis. *See Pearson,* 129 S. Ct. at 818 (receding from the

rigid sequencing requirement of *Saucier*). Whether qualified immunity applies constitutes a jury

question "only if 'the legal question of immunity is completely dependent upon which view of

the [disputed] facts is accepted by the jury.'" *See Miller v. Sanilac County*, 606 F.3d 240, 247

(6th Cir. 2010) (quoting *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007)).[11]

---

[10] The Sixth Circuit sometimes applies a three-part test to review qualified immunity
determinations. *See Holzemer v. City of Memphis,* 621 F.3d 512, 519 (6th Cir. 2010) (defining
the inquiry as (1) whether a constitutional violation has occurred, (2) "whether the violation
involved a clearly established constitutional right of which a reasonable person would have
known," and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the
official allegedly did was objectively unreasonable in light of the clearly established
constitutional rights").

[11] The Plaintiff has the burden of proving absence of qualified immunity, once
Defendants establish conduct within the scope of authority. *See Humphrey v. Mabry*, 482 F.3d

The Court begins with the first prong of the qualified immunity analysis: whether any genuine dispute exists, reading the facts in the favor of Plaintiff Carter, as to Defendant Palmer's alleged violation of a constitutional right. Where appropriate, the Court notes the particular right at issue, based on operative Supreme Court and Sixth Circuit precedent.

The Court addresses each of the charges initiated by Defendant Palmer against Plaintiff Carter.[12] *See Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) ("Overall we are satisfied that . . . a defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified.").[13] In sum, Carter faced prosecution for two counts of possession of marijuana and one

---

840, 846 (6th Cir. 2007). On the record evidence, no reasonable juror could conclude here that Palmer was not on duty and performing functions within his nominal legal authority. Thus, Carter has the burden on the qualified immunity analysis.

[12] Plaintiff Carter also urges the Court to delve into probable cause for the original traffic stop. However, *Sykes* makes clear that the deprivation of liberty must be "**apart from the initial seizure**." *See Sykes*, 625 F.3d at 309 (emphasis added).
The stop itself is not at issue by virtue of Judge Coffman's statute of limitations ruling and the fact that the basis for the stop was not part of the subject matter charged.

[13] The Third Circuit appears to have dealt most in depth with this issue. Significantly, in *Johnson*, the Third Circuit distinguished between:

> . . . a simultaneous arrest on multiple charges where, in a sense the significance of the charges for which there was not probable cause for arrest is limited as the plaintiff in the ensuing civil action could have been lawfully arrested and thus seized on at least one charge and, on the other hand, prosecution for multiple charges where the additional charges for which probable cause is absent almost surely will place an additional burden on the defendant.

*See Johnson*, 477 F.3d at 84. The first scenario, where the impact would be more limited, had earlier been addressed in *Wright v. City of Philadelphia*, 409 F.3d 595 (3d Cir. 2005), where the same circuit addressed probable cause only as to a criminal trespass claim and held that determination to dispose of malicious prosecution claims as to all other charges emerging from the events. *See id.* at 604. An en banc panel of the Third Circuit has since held that, where *Wright* and *Johnson* come into "unavoidable conflict," the holding in *Wright* controls. *See*

count each of possession of drug paraphernalia, tampering with physical evidence, operating a motor vehicle under the influence, promoting contraband, and possession of cocaine. *See* DE #38-2 (Uniform Citations).

Probable cause means "'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *See Sykes*, 625 F.3d at 306 (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). To evaluate probable cause for an arrest, a reviewing court considers "whether the 'facts and circumstances' . . . were 'sufficient to warrant a prudent person . . . in believing . . . that' the seized individual 'ha[d] committed . . . an offense.'" *See id.* (quoting *United States v. Hinchman*, 312 F.3d 198, 204 (6th Cir. 2002)). This belief must be "'particularized with respect to the person to be . . . seized.'" *See id.* (quoting *United States v. Romero*, 452 F.3d 610, 616 (6th Cir. 2006)).

*a. Possession of Marijuana at Automobile*

Construing the facts in Plaintiff's favor, probable cause indisputably existed for the possession of marijuana charge.[14] Kentucky Statute Annotated § 218A.1422 defines possession of marijuana as a Class A misdemeanor. *See* Ky. Rev. Stat. Ann. § 218A.1422. As described,

---

*Kossler v. Cristanti*, 564 F.3d 181, 194 n.8 (3d Cir. 2009) (en banc). Accordingly, a reviewing court must carefully assess the factual record and determine how the charges at issue came to be made.

In the instant case, the Court addresses probable cause as to each charge against Carter in order to ensure a full and appropriate analysis.

[14] Concerning the arrest made at the traffic stop, the Court notes that "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *See Devenpeck v. Alford*, 125 S. Ct. 588, 593 (2004) (citing *United States v. Watson*, 96 S. Ct. 820, 824-28 (1976), and *Brinegar v. United States,* 69 S. Ct. 1302, 1310-11 (1949)). Additionally, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* (citing *Maryland v. Pringle,* 124 S. Ct. 795, 800 (2003)). Again, Judge Coffman disposed of any claims premised on the initial seizure.

"[a] person is guilty of possession of marijuana when he knowingly and unlawfully possesses marijuana." *See id.*

Neither party contests that Carter had marijuana roaches at the traffic stop. The uniform citation completed by Palmer describes the relevant events as follows: "Search of veh recovered two marijuana roaches from drivers [sic] door handle recess." *See* DE #38-2 at 1. Defendant Palmer later described the basis for the charge as follows: "The marijuana cigarettes in the door handle of the vehicle." *See* DE #38-1 (Deposition of Palmer) ("Palmer Depo.") at 123 lns. 22-23.[15] Plaintiff Carter discussed the presence of the marijuana cigarettes in the car he was driving, admitting he told Palmer that he had roaches in the door of the car:

> That's where we messed up. I told him I didn't have nothing but some roaches. He said, "What's that you put in" -- I didn't say I put a roach in my mouth. I said I didn't have anything but roaches. We misunderstood each other right there, and he went on with his version of it that I said I put a roach in my mouth. I didn't. I said I didn't have anything but roaches. Those roaches I thought he was looking at at the door, the door's open, they're setting there. I said, "I told you I didn't have nothing but roaches." That's basically what I was saying.

*See* DE #76-1 (Deposition of Carter) ("Carter Depo.") at 156 lns. 13-23.

The traffic stop video also permits this Court to evaluate independently probable cause at the time of arrest. That video demonstrates that Defendant Palmer observed marijuana roaches in the driver's side door of the vehicle driven by Carter. *See* DE #39 (Traffic Stop Video) ("Traffic Stop Video") at 07:17. Palmer says, "There's more roaches right there." *See id.* Plaintiff Carter confirmed having the two roaches. *See id.* at 07:42. Later, Defendant Palmer collected the roaches. *See id.* at 8:42-8:47; 17:17-17:34. The video thus supports the probable cause

---

[15] When a deposition has been submitted in four-panel format, the Court cites the page number to the panel-specific page, not to the overall page containing the four panels. This citation practice provides more accurate pinpoint citations for readers.

determination made at the traffic stop.

As to the time from the preliminary hearing on October 24, 2006, forward, no material misrepresentations remove the shield created by the probable cause findings of the Fayette District Judge and Fayette Grand Jury.[16] At the preliminary hearing, Palmer simply advised the Fayette District Court that he recovered marijuana roaches from Carter's vehicle on the night in question. *See* DE #76-4 (Recording of Preliminary Hearing) at 28:30.[17] Neither criminal defense counsel nor the Commonwealth retained a recording, video, or transcript of the Grand Jury proceedings.[18]

---

[16] To advance a contention that officers materially misled a court, a plaintiff must demonstrate that the officers "(1) stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *See id.* (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)).

In this regard, Plaintiff Carter repeatedly emphasizes Defendant Palmer's testimony regarding the availability of dashboard video of the traffic stop. *See, e.g.*, DE #76 at ¶¶ 19, 48, 50, 54, 63-65, 67. With reference to the Salem Witch Trials, Carter asserts that the Fayette District Court and Grand Jury must have been ensorcelled by Palmer's brew of falsehoods to sanction continuing prosecution of Plaintiff. *See id.* According to the aspersions cast by Carter, prosecution would not have continued, absent such evil incantations. *See id.* Here, however, Plaintiff's outrage is misplaced because the traffic stop video offers considerable support to Defendant Palmer's account of the arrest-day events. *See generally* Traffic Stop Video. As described in this Opinion & Order, the video visibly endorses probable cause as to many of the various offenses charged. In the famous words of Lady Macbeth, brought to life in a story with its own share of witchcraft, "All the perfumes of Arabia will not sweeten this little hand." W. Shakespeare, Macbeth, act v, scene 1, line 47; *see Colorado v. Connelly*, 107 S. Ct. 515, 524 n.2 (1986) (Stevens, J.) (referencing the same passage). That is, no matter how many positive and hopeful characterizations Carter attached to the missing video, that video still portrayed probable cause for the offenses. Since the evidence allegedly withheld vindictively from the view of the Fayette District Court and Grand Jury obviously has no materiality to the probable cause determinations, Carter's assertions, are not persuasive.

[17] The audio recording includes multiple proceedings from Fayette District Court that day. To assist readers, the Court cites to the total time on the recording, not the time of the preliminary hearing at issue alone.

[18] Plaintiff Carter concedes that "it is reasonable to conclude that [Palmer] repeated at the least, the official sworn statements he made at the District Court Preliminary Hearing and in

*b. Possession of Marijuana at Detention Facility*

Construing the facts in Plaintiff's favor, no genuine dispute remains that probable cause also existed for the possession of marijuana charge at the detention facility. As noted previously, possession of marijuana constitutes a Class A misdemeanor and requires proof that a person "knowingly and unlawfully possesses marijuana." *See* Ky. Rev. Stat. Ann. § 218A.1422.

Neither party disputes that Plaintiff Carter possessed marijuana at the detention facility. Defendant Palmer advised the specific basis for the charge as follows: "The recovered drugs turned out to be crack cocaine and marijuana." *See* Palmer Depo. at 132 lns. 9-10. Plaintiff advised specifically "I had some marijuana and a small amount of cocaine." *See* DE #76-1 at 107 ln. 25, 108 ln. 1. This uncontested possession established probable cause.

Significantly, the strip search video documents and supports what the parties already agree occurred. Detention facility officers found material hidden in Plaintiff Carter's underwear. *See* DE #39 (Strip Search Video) ("Search Video") at 03:14-03:24. One of the officers observed, "Here we go. It's in his underwear." *See id.* Carter says, "Marijuana." *See id.* at 03:28. He later affirms, "I had marijuana, man." *See id.* at 04:17.

As to the time from October 24, 2006, forward, no material misrepresentations remove the shield created by the probable cause findings of the Fayette District Judge and Fayette Grand Jury. At the preliminary hearing, Palmer testified that detention facility officers located marijuana by searching Carter upon entry into the facility. *See* Prelim. Rec. at 29:50-30:10.

*c. Possession of Drug Paraphernalia – 2d*

Construing the facts in Carter's favor, no genuine dispute remains that probable cause

---

official records which appear affirmatively of record . . . ." *See* DE #76 at 3 n.3.

existed for Defendant Palmer's charge against Carter for possession of drug paraphernalia at the traffic stop. Kentucky Statute Annotated § 218A.500 defines the crime as a Class A misdemeanor and describes:

> It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter.

*See* Ky. Rev. Stat. Ann. § 218A.500. Drug paraphernalia includes rolling papers for marijuana use.[19] *See id.* § 218A.500(1).

Neither party here disputes that Plaintiff Carter had roaches wrapped with rolling papers at the traffic stop. On the Uniform Citation, Defendant Palmer detailed, "Paraphernalia 2nd for rolling papers around marijuana creating the roach." *See* DE #38-2 at 1. Palmer later explained the basis for the charge as follows: "That charge would have been for the papers used to wrap, you know, the marijuana cigarettes." *See* Palmer Depo. at 124 lns. 7-8. Palmer cited Paraphernalia 2nd because "Dispatch had advised apparently that [Carter] had had a prior charge for first offense paraphernalia." *See id.* at 124 lns. 12-13. In his deposition, Plaintiff discussed the presence of the marijuana cigarettes in the car he was driving. *See* Carter Depo. at 156 lns. 13-23. Given this uncontested possession of rolling papers, Defendant Palmer had probable cause to charge.

As before, the traffic stop video simply documents and supports what the parties agree

---

[19] Cigarette rolling papers have been determined not to qualify as paraphernalia. *See City of Louisville v. Bargains Galore, Inc.*, Nos. 2002-CA-1065-MR, 2002-CA-1142-MR, 2004 WL 259260, at *3 (Ky. Ct. App. Feb. 13, 2004) (unreported).

transpired. Defendant Palmer observed marijuana roaches in the driver's side door of the vehicle driven by Carter. *See* Traffic Stop Video at 07:17. Palmer says, "There's more roaches right there." *See id.* Plaintiff Carter confirmed having the two roaches. *See id.* at 07:42. Later, Defendant Palmer collected the roaches. *See id.* at 17:17-17:34.

As to the time from October 24, 2006, forward, no material misrepresentations remove the shield created by the probable cause findings of the Fayette District Judge and Fayette Grand Jury. At the preliminary hearing, Defendant Palmer advised the Fayette District Court that he recovered roaches. *See* Prelim. Rec. at 28:30. Additionally, as to the second offense aggravator, Palmer responded to a question from the court that he believed that Carter had a prior conviction. *See id.* at 33:25.

### d. Tampering with Physical Evidence

Construing the facts in Plaintiff's favor, Defendant Palmer indisputably had probable cause to charge Carter for tampering with physical evidence. This crime, a Class D felony, requires the following:

> A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he . . . [d]estroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding.

*See* Ky. Rev. Stat. Ann. § 524.100.

Defendant Palmer personally observed Plaintiff Carter put material in his mouth and begin chewing. On the Uniform Citation, Palmer recounted:

> He reached to his back right side and retrieved a paper object and put it into his mouth and started chewing. I removed above from veh and observed green in color substance in aboves [sic] mouth. Subject stated he was scared so he ate a roach. I arrested the above and read his Miranda rights and patted down above. The [sic] then stated he did not eat anything.

*See* DE #38-2 at 1. Defendant Palmer described the same events during his deposition:

> A. -- I made an approach, a driver's side approach. As I do, I observe Mr. Carter's with both hands on the steering wheel. I found that very odd. Most people are starting to get stuff out of the glove box, get their wallet out.
>
> I asked him, you know, what was going on, stuff like that, where his wallet was. He said it was in his back pocket. He leaned away from me when I asked him to retrieve his wallet from his back pocket, at which point he placed something in his mouth and started chewing on it.

*See* Palmer Depo. at 80 lns. 7-17. Palmer explained the basis for the charge as follows: "He was trying to dispose of the marijuana cigarettes – or cigarette that he was chewing on, and he stated that he ate a roach." *See id.* at 124 lns. 20-22. The personal observation of Defendant Palmer and the admission by Plaintiff Carter, even if later arguably recanted, establish probable cause to arrest.

Importantly, the traffic stop video documents and supports Palmer's account. Almost immediately upon approaching the vehicle driven by Carter, Defendant Palmer observes chewing by Plaintiff. *See* Traffic Stop Video at 00:50. Palmer asks, "What you got in your mouth?" *See id.* at 00:51. He repeats, "What's in your mouth?" *See id.* at 00:56. When Defendant Palmer later asks Carter why he was eating a roach, Plaintiff responded, "You scared me." *See id.* at 2:00. Carter later admitted that to Palmer, on the video, that he had eaten roaches. *See id.* at 8:42-8:47. Undoubtedly, Palmer acted reasonably in charging the offense.

As to the time from October 24, 2006, forward, no material misrepresentations remove the shield created by the probable cause findings of the Fayette District Judge and Fayette Grand Jury. At the preliminary hearing, Defendant Palmer reported that he observed Carter place something in his mouth. *See* Prelim. Rec. at 28:05. Palmer described the substance as green and noted Plaintiff was chewing. *See id.* at 28:25. Last, Defendant Palmer advised the state court that

Carter admitted eating a roach because of being scared. *See id.* at 28:57.

### *e. Operating a Motor Vehicle Under the Influence*

Construing the facts in favor of Plaintiff, the non-moving party, no genuine dispute remains that probable cause existed to charge Plaintiff with operating a motor vehicle under the influence. According to Kentucky Statute Annotated § 189A.010, "[a] person shall not operate or be in physical control of a motor vehicle anywhere in this state . . . [w]hile under the combined influence of alcohol and any other substance which impairs one's driving ability." *See* Ky. Rev. Stat. Ann. § 189A.010(1). When a person "[r]efus[es] to submit to any test or tests of one's blood, breath, or urine requested by an officer having reasonable grounds to believe the person was operating or in physical control of a motor vehicle in violation of [this statute]," that constitutes an aggravating circumstance. *See id.* § 189A.010(11)(e).

Even under Plaintiff's view of the facts, a reasonable officer would have perceived probable cause for this charge. Plaintiff openly admitted to using marijuana earlier in the day:

> Q. And this is a fair summary of your testimony -- correct me if I'm wrong -- you acknowledge that you had smoked some marijuana earlier that day, but you do not believe you were under the influence of marijuana when you were operating the car?
>
> A. At the time, no.

*See* Carter Depo. at 161 lns. 18-23. Additionally, Carter openly advised that his eyes often appear bloodshot and must have been that day. *See id.* at 71 lns. 18-25, 72 lns. 1-6. Finally, Plaintiff advised that Officer Mayes tested him in numerous ways regarding potential impairment. *See id.* at 70 lns. 6-25, 71 lns. 1-25, 72 lns. 1-21. Defendant Palmer advised the same regarding testing: "Officer Mayes did some type of test on his eyes, which I can't comment on – I don't know what he did – but he said he was under the influence of marijuana." *See*

Palmer Depo. at 125 lns. 17-20.[20] These uncontested facts – the earlier marijuana use, bloodshot eyes, and impairment testing – pair with other uncontested facts – the roaches found in the car, the swerving of the car – to demonstrate that, even reading the facts in Plaintiff's favor, probable cause existed for the charge.

The traffic stop video provides support for Defendant Palmer's account. Early in the traffic stop, Defendant Palmer advised Carter, "I stopped you for swerving." *See* Traffic Video at 02:50. Plaintiff later indicated he "didn't mean to swerve in front of [Palmer]." *See id.* at 08:40. Plaintiff appears confused and slow to respond to basic instructions from Defendant Palmer, such as where Carter was to place his hands. *See id.* at 1:03-1:23.

As to the time from October 24, 2006, forward, no material misrepresentations remove the shield created by the probable cause findings of the Fayette District Judge and Fayette Grand Jury. At the preliminary hearing, Defendant Palmer indicated that Carter crossed the white lines while driving. *See* Prelim. Rec. at 27:38. Palmer described Plaintiff as swerving and noted that Carter admitted smoking marijuana earlier in the day. *See id.* at 30:26-40. Defendant Palmer

---

[20] Mayes explained his actions in an affidavit accompanying Defendant Palmer's summary judgment motion:

> I spoke with Carter and performed field sobriety tests specifically geared towards the recognition of marijuana use on Carter. The specific tests I performed were: Horizontal Gaze Nystagmus (HGN) and Lack of Convergence (LOC) . . . My recollection is that Carter's eyes displayed smooth pursuit, however, they appeared dilated which, based upon my training and experience, is indicative of marijuana use. I further recollect that Carter's eyes displayed Lack of Convergence, which is an indicator of marijuana use. Based upon these physical observations, my training and my experience, it was my opinion that Carter was under the influence of marijuana. I communicated my observations to Trooper Palmer.

*See* DE #38-3 (Affidavit of Mayes) at 1.

noted Plaintiff's red eyes as well. *See id.* at 30:48.

Defendant Palmer provided some non-material misleading testimony at the preliminary hearing. Specifically, Palmer advised the Fayette District Court that no field sobriety tests had been conducted. *See id.* at 30:40-30:45. Of course, the evidence instead establishes that Officer Mayes applied field sobriety tests to Carter. *See, e.g.*, DE #38-3 at 1. While any misleading of any court is significant, the factual disparity here is not material to probable cause. *See Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007) (addressing materiality analysis). That is, Officer Mayes reports the results of the field sobriety tests as indicating the influence of marijuana. Accordingly, if the evidence had been introduced, that evidence would have supported a probable cause determination, not detracted from same. The absence of the tests did not, by definition, contribute to a probable cause finding.

### f. Promoting Contraband

Again construing the evidence in Plaintiff's favor, no genuine dispute remains that probable cause existed to support the charge of promoting contraband in the first degree. Kentucky law describes that offense, a Class D felony, as follows: "A person is guilty of promoting contraband in the first degree when . . . [h]e knowingly introduces dangerous contraband into a detention facility or penitentiary." *See* Ky. Rev. Stat. Ann. § 520.050.

Regarding the possession of controlled substances, Carter only admits, "I had some marijuana and a small amount of cocaine." *See* Carter Depo. at 107 ln.25, 108 ln. 1. Defendant Palmer advised that all events related to the detention facility search occurred after entering the facility doors. *See Palmer Depo.* at 129 lns. 15-24. As recounted, "Strip search by jail staff recovered plastic baggie twisted togerther [sic] to tie containing suspected marijuana and white substance - suspected crack cocaine." *See id.* Plaintiff offers no contest to the location of the

search and simply asserts that he hoped to place the drugs in an amnesty box or flush the drugs.[21] *See* Carter Depo. at 105 lns. 19-25, 106 lns. 1-23. Palmer explained the basis for this charge as follows: "He brought an amount of marijuana and crack cocaine into a secure area at the Fayette County Detention Center." *See* Palmer Depo. at 127 lns. 2-4. On the undisputed facts, probable cause existed for the charge.

The strip search video supports the account. During a strip search, detention facility officers find material hidden in Plaintiff Carter's underwear. *See* Strip Search Video at 03:14-03:24. One of the officers observed, "Here we go. It's in his underwear." *See id.* Carter says, "Marijuana." *See id.* at 03:28. He later affirms, "I had marijuana, man." *See id.* at 04:17.

As to the time from October 24, 2006, forward, no material misrepresentations remove the shield created by the probable cause findings of the Fayette District Judge and Fayette Grand Jury. At the preliminary hearing, Defendant Palmer indicated that a strip search inside the detention facility located cocaine and marijuana. *See* Prelim. Rec. at 29:50-30:10.

### g. Possession of Cocaine

Finally, construing the evidence in Carter's favor, no genuine dispute remains that probable cause existed for the possession of cocaine charge. Kentucky Statute Annotated § 218A.1415 defines the offense as follows:

A person is guilty of possession of a controlled substance in the first degree when he knowingly and unlawfully possesses: a controlled substance that contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers or,

---

[21] Based on this assertion, Carter may have had a defense to the contraband promotion charge. However, the facts support probable cause here because the detention facility had to resort to a strip search to secure the drugs. Probable cause is a much lower standard than proof beyond a reasonable doubt. Here, the evidence indisputably demonstrates that Carter had drugs hidden in his underwear inside the detention facility, and that evidence surely provides a reasonable basis for the contraband charge.

that is classified in Schedules I or II which is a narcotic drug; a controlled substance analogue; lysergic acid diethylamide; phencyclidine; gamma hydroxybutyric acid (GHB), including its salts, isomers, salts of isomers, and analogues; or flunitrazepam, including its salts, isomers, and salts of isomers.

*See* Ky. Rev. Stat. Ann. § 218A.1415(1). Cocaine is a Schedule II narcotic. *See* Ky. Rev. Stat. Ann. § 218A.070(1)(d).

No genuine dispute exists as to the facts underlying probable cause. Carter openly admits, "I had some marijuana and a small amount of cocaine." *See* DE #76-1 at 107 ln.25, 108 ln. 1. Defendant Palmer's uncontested account identifies the cocaine as emerging from the strip search at the detention facility. See DE #38-2 at 2. Specifically, Palmer advised, "Strip search by jail staff recovered plastic baggie twisted togerther [sic] to tie containing suspected marijuana and white substance - suspected crack cocaine." *See id.* Defendant Palmer advised the specific basis for the charge as follows: "The recovered drugs turned out to be crack cocaine and marijuana." *See* Palmer Depo. at 132 lns. 9-10. Again, the strip search video supports the account provided by both parties.

As to the time from October 24, 2006, forward, no material misrepresentations remove the shield created by the probable cause findings of the Fayette District Judge and Fayette Grand Jury. At the preliminary hearing, Defendant Palmer indicated that a strip search inside the detention facility located cocaine and marijuana. *See* Prelim. Rec. at 29:50-30:10.

\* \* \*

Simply put, the existence of probable cause for the formal prosecution forecloses the remaining constitutional tort Carter here pursues. Each charge formally brought finds sufficient support in the record, as the state district and grand jury determinations further confirm. Thus,

and without exploring other questionable claim elements,[22] the Court must grant Palmer's

dispositive motion. Palmer's initiation of the stop is debatable, primarily because of his later

testimony about the lack of a stop video. He faced justified scrutiny over that testimony, and the

Commonwealth ultimately dropped the case in apparent response. However, Palmer's

mishandling does not undercut the truth in the record: probable cause supported the prosecution

against Carter. He has no remedy here for a federal malicious prosecution claim.

For reasons detailed further below, the Court declines to reach the merits of Carter's state

malicious prosecution claim. The Court remands that claim to Fayette Circuit Court.

## C. Motion by Defendants Porter and Kent

Defendants Porter and Kent contend that the claims against them should be dismissed

under Rule 12(b)(6). Alternatively, Porter and Kent assert they should be granted summary

judgment. For reasons described more fully herein, the Court agrees with Defendants that the

---

[22] In addition to doubt about the effect of immunity on proof, as noted in a prior footnote, the Court also questions strongly whether the agreed dismissal qualifies as a disposition in Carter's favor. The dismissal was with prejudice, but nothing in the dismissal suggests that the adjudication exonerated Plaintiff. Typically, a non-merits result, to meet the malicious prosecution elements, must be "indicative of innocence." *See, e.g.*, *Dobiecki v. Palacios*, 829 F. Supp. 229, 235-36 (N.D. Ill. 1993); *see Alcorn v. Gordon*, 762 S.W.2d 809, 811 (Ky. Ct. App. 1988) (discussing Restatement (Second) of Torts §§ 660 and 663 and the requirement that a final disposition "indicate the innocence of the accused"). A dismissal resulting from suppression of evidence, which appears to be the substance of the result here, would not suffice. Generally, "a dismissal following suppression of evidence for a technical reason is not a reason indicative of innocence, so it cannot support a malicious prosecution claim." *Johnson v. Arroyo*, No. 09-C-1614, 2010 WL 1195330, at *3 (N.D. Ill. Mar. 22, 2010). This, again, also is the rule in Kentucky: "'[D]ismissal of a suit for technical or procedural reasons that do not reflect on the merits of the case is not a favorable termination of the action.'" *Davidson v. Castner-Knott Dry Goods*, 202 S.W.3d 597, 605 (Ky. Ct. App. 2006). Nothing in the motion to suppress challenged the reliability of the inculpatory substantive evidence – such as the marijuana or crack cocaine. Rather, the effort related to stop validity. The Commonwealth threw in the towel after the video surfaced, but the dismissal does not reflect or indicate Carter's innocence of the various charges. The Court does not decide that issue but notes another case characteristic potentially fatal to Plaintiff's claims.

federal matter should be dismissed for failure to state a claim.

Plaintiff, represented by former counsel at the time of filing, has done little more than provide a "bare bones" recitation of the elements for the failure to train section 1983 theory. *See id.* The Supreme Court's *Iqbal* and *Twombly* decisions caution against exactly this sort of minimalist pleading. *See See Iqbal,* 129 S. Ct. at 1949-50; *Twombly,* 127 S. Ct. at 1964-65. A "formulaic recitation of the elements of a cause of action" fails to constitute a well-pled claim. *See Twombly*, 127 S. Ct. at 1965. Here, the Complaint provides no notice to Defendants Porter and Kent of any specific factual allegations underlying the claim. Porter and Kent learn only that allegedly they "had power to prevent or aid in preventing commission of said wrong . . . [but] failed or refused to [prevent or aid]." *See* DE #1-5 at ¶ 39. In this way, the Complaint appears to be alleging that unspecified supervisory, training, or disciplinary inaction by Porter and Kent somehow gives rise to liability. Likewise, the Complaint indicates that Defendants Porter and Kent purportedly "approved or ratified" the conduct of Defendant Palmer, but the Complaint wholly fails to plead any facts to explain what actions Porter and Kent took to do so. *See id.* at ¶ 40. In the description of the malicious prosecution count, Defendants Porter and Kent **never even see any mention**, except for a generic incorporation of prior allegations in the Complaint. *See id.* at ¶¶ 56-60.

The federal malicious prosecution claim must be dismissed because Plaintiff Carter never sufficiently alleges any affirmative action by Defendants Porter and Kent. To be liable under section 1983, a supervisor must have "'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct

of the offending officers.'" *See Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)) (quoting *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982)). The only affirmative actions pled involve generic approval or ratification of Defendant Palmer's actions, but these bare bones contentions have no accompanying facts whatsoever. Such bare bones pleadings cannot survive the motion to dismiss, under the standards of Rule 12(b)(6), so the federal claim against Defendants Porter and Kent must be dismissed.

For reasons detailed just below, the Court declines to reach the merits of Carter's state malicious prosecution claim and instead remands that claim against Defendants Porter and Kent, such as it is, to the state courts.

**D. Remaining State Law Claim**

With judgment to Defendant Palmer and Defendants Porter and Kent on the federal malicious prosecution claim against them, only the state law malicious prosecution claim remains for evaluation. As the Sixth Circuit has held, "[a] district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction." *Novak v. Metrohealth*, 503 F.3d 572, 583 (6th Cir. 2006). In cases that have been removed to federal court, in particular, "'when all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed.'" *See id.* (quoting *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir. 2004)). An exception exists for cases "where the exercise of a district court's residual jurisdiction fosters the ends of 'judicial economy and the avoidance of multiplicity of litigation' over the concern with federal courts 'needlessly deciding state law issues.'" *See Sexstella-Wright*

*v. Sandusky City Sch. Dist. Bd. of Educ.*, 258 F. App'x 837, 839 (6th Cir. 2007) (quoting

*Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)).

Here, the balance favors remand to the state courts. Plaintiff Carter originally brought the case in Fayette Circuit Court. *See* DE #1-5. Upon removal of the case to federal court, Defendants Palmer, Porter, and Kent immediately moved to dismiss most of the claims, and Judge Coffman granted that motion as to all claims, except those sounding in federal and state malicious prosecution. *See* DE #7. The instant motions seek summary judgment and/or dismissal concerning the remaining claims. *See* DE #33; DE #34. Notably, the basis for these motions, in relevant part, is qualified immunity, which means that defendants cannot be sued, not that they have a particular defense. The progress of discovery, to date, should enable prompt disposition of the matter in the state courts. A state court should resolve the state law malicious prosecution claim, absent necessary adjudication here.

For these reasons, the Court will **REMAND** the state malicious prosecution claim against Defendant Palmer and Defendants Porter and Kent to the Fayette Circuit Court.

## IV. CONCLUSION

For the reasons and on the terms discussed above, the Court **GRANTS** Defendant Palmer's motion for summary judgment as to the federal malicious prosecution claim. Additionally, the Court **GRANTS** Defendants Porter and Kent's motion to dismiss on the federal malicious prosecution claim and **DENIES** in full Plaintiff's summary judgment motion. The Court **REMANDS** the state malicious prosecution claim against Defendant Palmer and Defendants Porter and Kent to the Fayette Circuit Court.

This Opinion & Order disposes of all federal claims. The Court will enter a separate

Judgment.

This the 1st day of March, 2011.

Signed By:

*Robert E. Wier*

United States Magistrate Judge